**UNITED STATES of America**

v.

**Earlie EDMONDS, Jr., also known as Earlie Edmund, Jr., Appellant.**

**No. 72–1988.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Argument May 22, 1973.

Decided Dec. 4, 1975.
Rehearing and Rehearing En Banc Denied Jan. 27, 1976.

John M. Steadman and Sherman L. Cohn, Attys., Washington, D.C., and Warren E. Connelly and Alan D. Gordon, Student Counsel, were on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, and John A. Terry, Brian W. Shaughnessy and Julius A. Johnson, Asst. U. S. Attys., were on the brief for appellee.

Before ROBINSON and WILKEY, Circuit Judges, and KAUFMAN,* United States District Judge for the District of Maryland.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

■ Appealing from jury-trial convictions of armed rape [1] and assault with a dangerous weapon,[2] appellant contends solely, and on constitutional grounds principally, that the District Court erred in admitting, for purposes of impeaching his testimony, evidence of his conviction at age of 16 of a burglary allegedly committed in North Carolina.[3] The appeal has been successively held in abeyance pending our disposition of a series of other cases presenting substantially the same constitutional arguments,[4] and our decision in the last group of those cases has stripped appellant of his federal claims.[5] Remaining to be answered, however, is the question whether the North Carolina conviction is encompassed by the statute authorizing conviction-impeachment in trials of District of Columbia offenses.[6] We hold that it is.[7]

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d) (1970).

1. D.C.Code §§ 22–2801, 22–3202(a) (1973).

2. D.C.Code § 22–502 (1973). See note 7 *infra*.

3. At trial, appellant testified that he was 14 years old when the burglary occurred. In their brief on appeal, however, his counsel inform us that appellant was mistaken in that regard, and that he was 15 at the time of the burglary and 16 when convicted on a plea of guilty entered on advice of counsel. Both sides have argued and submitted the appeal on the latter premises and, accordingly, we accept them for purposes of our decision. See note 44 *infra*.

4. *United States v. Henson*, 159 U.S.App.D.C. 32, 486 F.2d 1292 (*en banc* 1973), decided together with No. 71–1491, *United States v. Marshall*; No. 71–1497, *United States v. Brown*; and No. 71–1356, *United States v. Jeffries*, the present litigants having adopted the opposing briefs therein on similar constitutional points raised but not reached because we concluded that the District of Columbia statute governing conviction-impeachment, D.C.Code § 14–305 (1973), quoted *infra* note 6, was unconstitutional as an *ex post facto* law when applied to offenses committed prior to the effective date of an amendment rendering admission of covered convictions nondiscretionary, a problem not present here; *United States v. Hairston*, 161 U.S.App.D.C. 466, 495 F.2d 1046 (1974), wherein the constitutional claims again were not reached because we held as a matter of statutory construction that the statute does not apply to trials of federal offenses in the District Court; *United States v. Belt*, 169 U.S. App.D.C. 1, 514 F.2d 837 (*en banc* 1975), decided together with No. 72–1738, *United States v. Robinson*; No. 73–1165, *United States v. Lewis*; and No. 73–1167, *United States v. Walls*, wherein we held the statute applicable to trials of post-amendment nonfederal offenses in the District Court and fully sustained its constitutionality as so applied.

5. *United States v. Belt, supra* note 4, 169 U.S. App.D.C. at 6–8, 514 F.2d at 842–844, 846–850.

6. D.C.Code § 14–305 (1973), which provides:

(a) No person is incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of a criminal offense.

(b)(1) Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). A party establishing conviction by means of cross-examination shall not be bound by the witness' answers as to matters relating to the conviction.

(2)(A) Evidence of a conviction of a witness is inadmissible under this section if—

(i) the conviction has been the subject of a pardon, annulment, or other equivalent procedure granted or issued on the basis of innocence, or

(ii) the conviction has been the subject of a certificate of rehabilitation or its equivalent and such witness has not been convicted of a subsequent criminal offense.

(B) In addition, no evidence of any conviction of a witness is admissible under this

7. See note 7 on page 64.

■■ Shortly before appellant's rape trial began, the prosecutor stated that should appellant testify, he intended to introduce the burglary conviction in an effort to impeach. Over objection by defense counsel,[8] the trial judge held that the conviction might be offered to that end.[9] Thereafter, early on direct examination, appellant acknowledged that he had been so convicted,[10] explaining his youthfulness and other surrounding circumstances, and later the judge instructed the jury as to the limited purpose which that information permissibly could serve.[11] Appellant now complains that the ruling prompting this line of testimo-

section if a period of more than ten years has elapsed since the later of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense.

(c) For purposes of this section, to prove conviction of crime it is not necessary to produce the whole record of the proceedings containing the conviction, but the certificate, under seal, of the clerk of the court wherein the proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient.

(d) The pendency of an appeal from a conviction does not render evidence of that conviction inadmissible under this section. Evidence of the pendency of such an appeal is admissible.

7. In another respect, however, we do modify the judgment appealed from. Concurrent sentences of 3 to 10 years on the armed assault conviction and 8 to 24 years on the armed rape conviction were imposed. Finding guilt on the armed rape count, the jury conformably with the trial judge's instructions, returned no verdict on an additional count of unarmed rape, D.C.Code § 22–2801 (1973), which was a lesser offense included within the armed rape. See cases cited *infra* this note. So too, however, was the armed assault, which was an essential part of the proof, that the rapist was armed. Accordingly, we vacate the assault conviction. Compare, *e. g., United States v. Belt, supra* note 4, 169 U.S.App.D.C. at 3 n. 3, 514 F.2d at 839 n. 3; *United States v. Toy,* 157 U.S.App.D.C. 152, 154–155, 482 F.2d 741, 743–744 (1973); *United States v. Holiday,* 157 U.S.App.D.C. 140, 142 n. 6, 482 F.2d 729, 731 n. 6 (1973); *United States v. Johnson,* 155 U.S. App.D.C. 28, 29, 475 F.2d 1297, 1298 (1973).

8. Not his counsel on appeal.

9. The record makes clear that the ruling was nondiscretionary, allowance of the impeachment being deemed the mandate of the statute. Beyond peradventure, that view was correct if the conviction fell within the purview of the statute. See note 6 *supra;* H.R.Rep.No.91–907, 91st Cong., 2d Sess. 62–63 (1970); *United States v. Belt, supra* note 4, 169 U.S.App.D.C. at 3, 514 F.2d at 839.

10. Since the acknowledgement obviously was an attempt to soften the impact of the revelation which the Government expectably would have made pursuant to the judge's ruling, we cannot accept the argument that appellant is now foreclosed from attacking the ruling. See *United States v. Lewis,* 157 U.S.App.D.C. 43, 47–48, 482 F.2d 632, 636–637 (1973); *Jones v. United States,* 131 U.S.App.D.C. 88, 91 n. 5, 402 F.2d 639, 642 n. 5 (1968). The situation here differs critically from those in which evidence of the prior conviction complained of was truly volunteered. See *Dear Check Quong v. United States,* 82 U.S.App.D.C. 8, 10, 160 F.2d 251, 253 (1947). See also *Felton v. United States,* 83 U.S.App.D.C. 277, 279, 170 F.2d 153, 155, *cert. denied,* 335 U.S. 831, 69 S.Ct. 18, 93 L.Ed. 385 (1948).

11. The trial judge's general charge to the jury incorporated an instruction limiting consideration of the conviction to an assessment of appellant's credibility as a witness. Defense counsel did not request the instruction, nor was it given, at the time appellant testified to the conviction. See, *e. g., United States v. McClain,* 142 U.S.App.D.C. 213, 217–218, 440 F.2d 241, 245–246 (1971). The apparent explanation is that appellant was the only defense witness, and when he left the stand the Government was uncertain about rebuttal evidence, with the result that the general charge was expected to follow shortly on this same day—which, aside from one short rebuttal witness and summation, it did. Compare *United States v. Bell,* 165 U.S.App.D.C. 146, 154 n. 42, 506 F.2d 207, 215 n. 42 (1974); *United States v. Henson, supra* note 4, 159 U.S.App.D.C. at 39–40 n. 6, 486 F.2d at 1299, 1300 n. 6; *United States v. Fench,* 152 U.S.App.D.C. 325, 332, 470 F.2d 1234, 1241 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). In any event, since no issue in this regard is raised or briefed on appeal, we do not consider the matter further. See, *e. g., Rone v. Rone,* 78 U.S.App.D.C. 369, 141 F.2d 23 (1944); *Minnesota Min. & Mfg. Co. v. Coe,* 73 App.D.C. 146, 148, 118 F.2d 593, 595 (opinion on rehearing), *cert. denied,* 314 U.S. 624, 62 S.Ct. 89, 86 L.Ed. 501 (1941); *Brown v. Sielaff,* 474 F.2d 826, 828 (3d Cir. 1973). See also Fed.R.App.P. 28(a)(2), (4).

ny was erroneous because "North Carolina . . . failed to provide the kind of enlightened treatment of juveniles which Congress intended would exist in the District of Columbia before impeachment by means of prior convictions would be permitted. . . ." [12] Put somewhat differently, appellant, as a 16-year-old, might not have been subjected to criminal prosecution in the District as an adult,[13] and thus might have been spared the conviction utilized for impeachment in this case. While this contrast between District and North Carolina procedure cannot be doubted,[14] we find the conclusion drawn therefrom unacceptable.

■ All charges on which appellant was standing trial were grounded on provisions of the District of Columbia Code.[15] Consequently, resort to the District's impeachment statute was entirely in order.[16] The statute enables impeachment of a witness by proof that he "has been convicted of a criminal offense" meeting stated conditions.[17] Indisputably, the conviction in question satisfied the statutory specifications unless exempted by the age-based difference in treatment of juveniles accused of crime in the District and North Carolina, respectively.[18] We are satisfied that the dissimilarity cannot serve to remove the North Carolina conviction from the ambit of the District statute.

To be sure, had the episode leading to the conviction transpired in the District, the ruling on its admissibility could have been diametrically opposite. Because appellant was only 16 years old,[19] he could not have been tried in the District as an adult unless juvenile jurisdiction over him was waived.[20] A waiver would have involved a discretionary determination, upon "full investigation," that the criminal process should be substituted for juvenile proceedings and disposition.[21] Of course, such a determination as to appellant may or may not have been made, and if not the juvenile disposition could not have been used for impeachment.[22] We are told that by statute in force in North Carolina, when the burglary prosecution occurred, persons 14 years or older who are charged with felonies punishable by more than ten years' imprisonment must be prosecuted as adults.[23] Since, as appears, the maximum punish-

---

12. Appellant's Brief at 11.

13. See text *infra* at notes 19–21.

14. See text *infra* at notes 19–24.

15. See text *supra* at notes 1–2 and note 7 *supra*. They were triable in the District Court because the indictment charging them was returned during the transitional period established by D.C.Code § 11–502(2) (1973).

16. *United States v. Belt, supra* note 4, 169 U.S. App.D.C. at 6–8, 514 F.2d at 842–844.

17. See note 6 *supra*.

18. The conviction was of burglary, an offense punishable under North Carolina law by imprisonment in excess of a year. See note 24 *infra* and accompanying text. It is thus unnecessary to inquire as to whether it "involved dishonesty or false statement" within the meaning of the statute. See, however, H.R. Rep.No.91–907, 91st Cong., 2d Sess. 62 (1970). The conviction—charged and not denied as appellant's most recent—occurred in 1960, and appellant was on parole therefrom at the time of trial in the instant case. The statute does not differentiate between criminal conviction in the District of Columbia and elsewhere. None of the conditions which would remove the conviction as a basis of impeachment appears. See note 6 *supra*.

19. See note 3 *supra*.

20. D.C.Code § 11–914 (1961). See also *Kent v. United States,* 383 U.S. 541, 560, 86 S.Ct. 1045, 1047, 16 L.Ed.2d 84, 97 (1966); *Harling v. United States,* 111 U.S.App.D.C. 174, 177–178, 295 F.2d 161, 164–165 (1961). The matter is now covered by D.C.Code § 16–2307 (1973).

21. D.C.Code § 11–914 (1961). See also *Kent v. United States, supra* note 20, 383 U.S. at 554–555, 86 S.Ct. at 1053–1054, 16 L.Ed.2d at 93–94; *Haziel v. United States,* 131 U.S.App.D.C. 298, 301–304, 404 F.2d 1275, 1278–1281 (1968); *Kent v. United States,* 130 U.S.App. D.C. 343, 346, 401 F.2d 408, 411 (1968).

22. *Brown v. United States,* 119 U.S.App.D.C. 203, 206–208, 338 F.2d 543, 546–548 (1964); *Thomas v. United States,* 74 App.D.C. 167, 169–170, 121 F.2d 905, 907–908 (1941).

23. See *State v. Burnett,* 179 N.C. 735, 102 S.E. 711, 713 (1920). See also *State v. Alexander,* 279 N.C. 527, 184 S.E.2d 274, 280 (1971); *State v. Rogers,* 275 N.C. 411, 168 S.E.2d 345, 353 (1969). But see *State v. Miller,* 281 N.C. 70, 187 S.E.2d 729, 733–735 (1972).

ment for the burglary for which appellant was indicted exceeded the ten-year limit,[24] treatment as an adult was mandatory.

Nonetheless, the trial judge ruled correctly on the Government's conditional proffer of the North Carolina conviction as a factor reflecting adversely on appellant's credibility. For nearly three-quarters of a century, Congress has regulated conviction-impeachment in the District with relatively little change in language denoting the types of convictions that might be employed for that purpose.[25] During the long era when the critical legislative expression was "convicted of crime," [26] this court indulged the statutory words a range consistent with the aims and ends of witness-impeachment. Thus it has frequently been held that the "crime" to which the statute referred included not just felonies [27] but also misdemeanors capable of assisting an evaluation of truthtelling,[28] despite the readier assimilation of "felony" with "crime." [29] In like vein, we have left untouched impeachments by conviction under the Federal Youth Corrections Act,[30] despite the similarity of its goals with those of juvenile legislation.[31] On the other hand, the very nature of witness-impeachment has outlawed some low-value misdemeanor convictions,[32] as well as some low-level penal adjudications,[33] although in a sense all could be deemed species of "crime."

■ By our appraisal, a construction of the impeachment statute which would exclude use of his North Carolina burglary conviction is wholly unwarranted. At the time of the rape trial, the statute permitted, as it now does, impeachment by "evidence that the witness has been convicted of a criminal offense." [34] The legislative history of the current text re-

---

24. Appellant testified, and the parties agree, that a sentence of 52 to 55 years' imprisonment was imposed upon the North Carolina burglary conviction.

25. Act of Mar. 3, 1901, ch. 854, § 1067, 31 Stat. 1357 ("convicted of crime other than perjury"); amended, Act of June 30, 1902, ch. 1329, 32 Stat. 540 ("convicted of crime"); amended, Pub.L.No. 88–241, § 1, 77 Stat. 519 (1963) ("convicted of crime"); amended, Pub. L.No. 91–358, tit. I, § 133(a), 84 Stat. 550 (1970) ("convicted of a criminal offense"); now codified as D.C.Code § 14–305 (1973).

26. See note 25 supra.

27. See Campbell v. United States, 85 U.S.App. D.C. 133, 135, 176 F.2d 45, 47 (1949).

28. Id. at 134–135, 176 F.2d at 46–47 (petit larceny); Bostic v. United States, 68 App.D.C. 167, 168–169, 94 F.2d 636, 637–638, cert. denied, 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095 (1937) (simple assault); United States v. Boyer, 80 U.S.App.D.C. 202 n. 3, 150 F.2d 595 n. 3, 166 A.L.R.2d 209 (1945); Sanford v. United States, 69 App.D.C. 44, 46, 98 F.2d 325, 327 (1938); Clawans v. District of Columbia, 61 App.D.C. 298, 299, 62 F.2d 383, 384 (1933); Murray v. United States, 53 App.D.C. 119, 125, 288 F. 1008, 1014, cert. denied, 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218 (1923).

29. See Campbell v. United States, supra note 27, 85 U.S.App.D.C. at 135, 176 F.2d at 47.

30. Act of Sept. 30, 1950, ch. 1115, § 2, 64 Stat. 1085, as amended, 18 U.S.C. § 5005 et seq. (1970).

31. See Weaver v. United States, 133 U.S.App. D.C. 66, 68–69 & n. 2, 408 F.2d 1269, 1271–1272 & n. 2, cert. denied, 395 U.S. 927, 89 S.Ct. 1785, 23 L.Ed.2d 245 (1969); Luck v. United States, 121 U.S.App.D.C. 151, 154, 348 F.2d 763, 767 (1965).

32. Convictions of misdemeanors not inherently wicked are not usable for impeachment. Clawans v. District of Columbia, supra note 28, 61 App.D.C. at 299, 62 F.2d at 384. See also cases cited infra note 33.

33. Convictions for violations of municipal ordinances: Pinkney v. United States, 124 U.S. App.D.C. 209, 211, 363 F.2d 696, 698 (1966); Bostic v. United States, supra note 28, 68 App. D.C. at 169, 94 F.2d at 636; Clawans v. District of Columbia, supra note 28, 61 App.D.C. at 299, 62 F.2d at 384; those for petty offenses not triable by jury: Pinkney v. United States, supra, 124 U.S.App.D.C. at 211–212, 363 F.2d at 698–699, but see note 36 infra; those for offenses punishable only by fine: Clawans v. District of Columbia, supra note 28, 61 App. D.C. at 299, 62 F.2d at 384, citing Schick v. United States, 195 U.S. 65, 70, 24 S.Ct. 826, 827, 49 L.Ed. 99, 102 (1904); those involving merely a forfeiture of collateral: Kitchen v. United States, 95 U.S.App.D.C. 277, 279, 221 F.2d 832, 834 (1955), cert. denied, 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958).

34. See note 6 supra.

veals that the shift in language from "crime"[35] to "criminal offense" was intended, not to constrict, but to broaden the category of convictions usable under the statute.[36] And we have construed even the narrower word "crime" as embracing adult convictions of persons who but for waiver would have been proceeded against only as juveniles. In *Luck v. United States*,[37] the prosecutor was allowed, over objection, to elicit from the accused on cross-examination that he had previously pleaded guilty to grand larceny. The basis of the objection was that the accused was a juvenile at the time of the larceny, on account of which it was argued that the conviction could not be introduced for impeachment. Juvenile jurisdiction over the accused had been waived as to the larceny charge, however, and he had been tried as an adult in the District Court and sentenced under the Youth Corrections Act. In sustaining the conviction, we said:

> Appellant relies in this regard upon the [statutory] provisions which are designed to relieve proceedings in the Juvenile Court[38] from the consequences which customarily accompany conviction of crime in a tribunal of general jurisdiction. The Government points out, however, that that statute is in terms addressed to adjudications made by the Juvenile Court in the exercise of its jurisdiction, and that it has no application when that jurisdic-

tion has been expressly waived by the Juvenile Court. Here, appellant was waived out of the jurisdiction of the Juvenile Court, and the District Court was authorized to, and did, try and sentence him as an adult. Such a conviction, so it is said, carries with it the usual incidents, including subsequent exposure to impeachment by reason of the earlier conviction authorized by [the impeachment statute].

We agree with the Government to this extent, namely, that we find no clear purpose on the part of Congress to withdraw from the reach of this last-mentioned statute convictions of juveniles in the District Court as adults following upon waivers of jurisdiction by the Juvenile Court. Just as more severe sentencing provisions are available for the punishment of those who are waived, so does conviction entail the consequence that the Government may seek to use it to attack credibility in a later proceeding. Such harsher consequences are always arguments against the wisdom of waiver in an individual case, but their very persuasiveness for this purpose rests upon the existence of such consequences.[39]

That construction settles the issue here. No more under the present statute than under its forerunner can we discern a congressional purpose to exclude adult convictions of waived juveniles.[40] So, had the questioned convic-

---

**35.** See note 25 *supra*.

**36.** The House Committee of the District of Columbia explained the change as follows:

> The decision of *Pinkney v. United States* [*supra* note 33] applied the word "crime" in existing section 14–305 to limit impeachment to offenses triable by jury. This artificial limitation has prevented impeachment by offenses such as false report to the police and soliciting prostitution which manifestly involve dishonesty or false statement. The rule adopted by the Committee ends this artificial distinction by substituting the word "offense" for the word "crime".

H.R.Rep.No.91–907, 91st Cong., 2d Sess. 62 (1970).

**37.** *Supra* note 31.

**38.** The jurisdiction then exercised by the Juvenile Court of the District of Columbia is for the most part now vested in the Family Division of the Superior Court of the District of Columbia. D.C.Code § 11–1101 (1973).

**39.** *Luck v. United States, supra* note 31, 121 U.S.App.D.C. at 153–154, 348 F.2d at 765–766 (footnotes omitted). See also *Hood v. United States*, 125 U.S.App.D.C. 16, 17–18, 365 F.2d 949, 950–951 (1966).

**40.** We have already observed that the current provision was designed to expand, not contract, the category of convictions available for impeachment. See note 36 *supra* and accompanying text.

tion occurred in the District of Columbia after a waiver, it could have done service as impeachment material notwithstanding appellant's age at the time of the offense. We perceive no difference in legal result from the fact that the adult conviction involved in this case emanates from another jurisdiction in which at that age no waiver was required.[41] The statutory text suggests none,[42] and its legislative history discloses none.[43] We hold that there is none.[44]

Appellant's conviction of assault with a dangerous weapon is vacated,[45] and as thus modified the judgment appealed from is affirmed.

So ordered.

---

**41.** We are mindful that a waiver of juvenile jurisdiction contemplates due consideration of the offender's rehabilitative prospects, and that a decision to waive reflects a conclusion that no feasible alternative to criminal prosecution exists. We find no indication, however, that Congress intended to exclude state convictions in instances where the accused was below the age at which a waiver determination would have been required in the District of Columbia. We believe it more likely that Congress recognized that legislative judgments might differ as to the age at which minors should become unqualifiedly subject to the jurisdiction of the criminal courts. Moreover, Congress has defined a part that rehabilitation is to play in the conviction-impeachment area. A prior conviction is inadmissible where "the conviction has been the subject of a certificate of rehabilitation or its equivalent and [the] witness has not been convicted of a subsequent criminal offense," D.C.Code § 14–305 (b)(2)(A)(ii) (1973), or where "a period of more than ten years has elapsed since the latter of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense." *Id.* § 14–305(b)(2)(B). These specifications hardly leave a basis for assuming the greatly enlarged role for rehabilitation which appellant urges in this case.

**42.** See note 6 *supra.*

**43.** See note 36 *supra* and accompanying text. We have seen nothing else in the legislative history which even remotely touches the question.

**44.** We have noted that appellant was 15 years old when the burglary was committed and 16 when he was convicted. See note 3 *supra.* Under the District of Columbia statute as it stood in 1960, juvenile jurisdiction over him could not have been waived earlier than his arrival at age 16. D.C.Code § 11–914 (1961). But see D.C.Code § 16–2307(a)(1) (1973) (lowering the age to 15). As we have had occasion to admonish, "proceedings against a child should not be delayed in order that it may become possible to try him as adults are tried," *Williams v. Huff,* 79 U.S.App.D.C. 31 n. 1, 142 F.2d 91 n. 1 (1944), but here, as in that case, there is no basis for assuming that any delay in proceeding on the burglary charge was for that purpose.

**45.** See note 7 *supra.*