Jose **GONZALEZ**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 03–CM–73.

District of Columbia Court of Appeals.

Submitted Sept. 15, 2004.

Decided Oct. 7, 2004.

Joseph Virgilio, appointed by the court, for appellant.

Margaret Sewell, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the

time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Alessandra DeBlassio, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and REID, Associate Judges, and NEWMAN, Senior Judge.

REID, Associate Judge:

At a bench trial, appellant Jose Gonzalez was convicted of malicious destruction of property,[1] in violation of D.C.Code § 22–403 (1996).[2] He challenges the sufficiency of evidence. We reverse the judgment of the trial court, concluding that the evidence was insufficient beyond a reasonable doubt to convict Mr. Gonzalez of the malicious destruction of property offense.

## FACTUAL SUMMARY

The evidence presented by the government shows that on October 25, 2002, at the intersection of 16th and U Streets, in the Northwest quadrant of the District of Columbia, at approximately 9:30 p.m., Officer Patrick Flynn of the Metropolitan Police Department ("MPD") was attempting to cross the street on a police mountain bike while on patrol duty. It was a rainy evening and according to Officer Flynn "[it] was a well-lit intersection." Officer Flynn testified that a vehicle, driven by Mr. Gonzalez, "appeared to have come around another car that was already in the intersection" striking him, bouncing him off the hood and windshield of the vehicle and knocking his bike underneath it. After being hit, Officer Flynn landed in the street. On cross-examination, Officer Flynn was asked: "When your bicycle got hit by the vehicle was the bicycle crumpled

up almost instantaneously?" He replied: "I didn't get to see my bicycle. As I stated before the last I had seen of it, it was already trapped underneath his vehicle."

When Mr. Gonzalez struck Officer Flynn with his vehicle he slowed down momentarily but then left the scene driving southbound on New Hampshire Avenue with Officer Flynn's bike still underneath his car. Michael Coen, who witnessed the incident from approximately ninety feet away, saw Mr. Gonzalez hit Officer Flynn, stop for "maybe two seconds, and then the car left." Mr. Gonzalez testified that as he was driving from the scene he heard what sounded "like a can being dragged on my car." Officer Flynn testified that as Mr. Gonzalez drove away he "could see the sparks coming out from the bike ... and could hear the grinding of metal against the pavement." He also stated that his bike was "completely destroyed" and he had "just paid $100 out of [his] own pocket to have it overhauled." There was no testimony concerning whether the damage to the bike was caused immediately upon contact with Mr. Gonzalez' car, or whether it occurred after he began driving away from the scene of the accident.

Officer Gulley received a radio transmission that Officer Flynn had been struck by a white Nissan or Toyota vehicle that had fled the scene of 16th and U heading west on New Hampshire Avenue, Northwest. When Officer Gulley saw the vehicle matching the described tag number he initiated a traffic stop on the 1800 block of P Street, Northwest, and apprehended the

---

**1.** Mr. Gonzalez was sentenced to 180 days in jail, execution of sentence suspended for all but thirty days, one year of supervised probation, and a $250 fine. He was also sentenced to seventy-five hours of community service and was ordered not to drive during the probationary period.

**2.** Recodified at D.C.Code § 22–303 (2001).

driver.[3] Officer Gulley testified that "on the left front of the vehicle there was damage to the fender and front of the vehicle," but there was nothing attached to the vehicle. When Officer Gulley saw the bike approximately two weeks after the incident, the bike was "completely totaled."

## ANALYSIS

■■■ Mr. Gonzalez claims that the court misinterpreted the law governing malicious destruction of property in finding that the government was not required to prove malice; and therefore, the evidence was insufficient to convict him. "We review the sufficiency of the evidence in a light most favorable to the government, giving it the benefit of all reasonable inferences. It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *In re M.I.W.,* 667 A.2d 573, 575 (D.C.1995) (internal quotation marks and citations omitted). Moreover, we will not distinguish between direct and circumstantial evidence in a claim challenging the sufficiency of the evidence. *See Chambers v. United States,* 564 A.2d 26 (D.C.1989).

Our review of the record shows that the trial court inadvertently confounded the elements of malice and intent with respect to the charged offense of malicious destruction of property, and in doing so mistakenly discounted the element of malice. The statute for malicious destruction of property provides: "Whoever maliciously injures or breaks or destroys, or attempts to injure or break or destroy ... any public or private property, whether real or personal, not his or her own," is guilty of destruction of property. D.C.Code § 22–403 (1996).[4] The trial court correctly identified the offense as "a general intent crime" but mistakenly and confusingly indicated that a showing of malice was not essential, that the defendant was "charged with the natural and probable consequences of [his] conduct," was not "a malevolent person," and "did not exercise the degree of care and caution in driving the streets of the District of Columbia." In making these statements the court appeared to say that Mr. Gonzalez could be convicted based on a showing of negligence.

■■■ Both malice and intent are elements of the malicious destruction of property offense, and more than proof of negligence is required to obtain a conviction. We have addressed previously the intent and malice elements of malicious destruction of property. In *Carter v. United States,* 531 A.2d 956 (D.C.1987), we said: "[M]alice is not synonymous with, and does not require, a specific intent to injure or destroy the property." *Id.* at 962. "[A] finding that the accused intended the actual harm which resulted from his wrongful act is not an essential prerequisite to the existence of malice. All that is required is a conscious disregard of a known substantial risk of the harm which the statute is intended to prevent." *Id.* (quoting *Charles v. United States,* 371 A.2d 404, 411 (D.C. 1977) (citation and internal quotation marks omitted)). Furthermore, "[a]lthough malice may be inferred from intentional wrongdoing, the only intent required to be proven is the intent to do the act which results in the injury—in other words a general intent." *Id.* (citation and footnote omitted). As we also said in *Ross v.*

---

**3.** Officer Gulley testified that he did not believe that Mr. Gonzalez was under the influence of any substance at the time he was apprehended.

**4.** Recodified at D.C.Code § 22–303 (2001).

*United States,* 520 A.2d 1064, 1065 (D.C. 1987), the "requisite intent" for malicious destruction of property is an "intent to injure or destroy the property, for a bad or evil purpose, and not merely negligently or accidentally." *Id.* at 1065 (citation and internal quotation marks omitted).

In discussing the malice element of the malicious destruction of property offense in *Guzman v. United States,* 821 A.2d 895 (D.C.2003), we declared:

Malice is defined as the following:

(1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and willful doing of an act with awareness of a plain and strong likelihood that such harm may result.

*Id.* at 898 (quoting *Thomas v. United States,* 557 A.2d 1296, 1299 (D.C.1989) (citation, footnote and internal quotation marks omitted)). We emphasized in *Thomas, supra,* "(1) that malice may be inferred from intentional wrongdoing; (2) that the wrongdoing must be accompanied by a bad or evil purpose; and (3) that malice would not be shown if the injury were merely the result of negligence or accident." *Id.* at 1299. Thus, it is clear, contrary to the trial court's determination, that malice is an element of malicious destruction of property.

The trial court's analysis of this case leaves substantial doubt as to whether Mr. Gonzalez could be found guilty beyond a reasonable doubt of malicious destruction of property. This is particularly true since the trial court did not distinguish between the pre-collision, collision or post-collision events, and discounted the element of malice. The record shows that the court focused on the pre-collision events. As the trial judge stated: "[T]he operative time frame for purposes of the destruction of property [offense] are the events which led up to the actual contact." The problem with the focus on the pre-collision period is that the trial court found no malice on Mr. Gonzalez's part and indeed concluded that he was negligent. The court declared: "I guess I don't have any reason to say that this Mr. Gonzalez wants to hurt anybody. But you just cannot go . . . through life kind of haphazard and . . . not exercise due care and caution on the streets of the District of Columbia driving a motor vehicle, and when you hit somebody say, oops, I didn't mean it. Didn't see him . . . ." There was no finding of malice during the pre-collision period. Furthermore, even if one could infer malice or conscious disregard of the danger that the bicycle would be destroyed or damaged in the post-collision period when Mr. Gonzalez drove away from the scene of the accident, no evidence was introduced establishing beyond a reasonable doubt that the destruction of the bicycle occurred during the post-collision period rather than immediately upon impact. Consequently, on this record we are constrained to conclude that the evidence was insufficient beyond a reasonable doubt to convict Mr. Gonzalez of the malicious destruction of property offense.

Accordingly, for the foregoing reasons, we reverse the judgment of the trial court.

*So ordered.*